# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:13-CV-259-GCM

| | | |
|---|---|---|
| **FELICIA CHEVETTE HALL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **ORDER** |
| | ) | |
| **CHARLOTTE MECKLENBURG** | ) | |
| **SCHOOLS, CHARLOTTE-** | ) | |
| **MECKLENBURG BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## I.    INTRODUCTION

This matter is before the Court on Defendant Charlotte-Mecklenburg Board of Education's Motion for Summary Judgment (Doc. No. 24) and Memorandum in Support (Doc. No. 25), Plaintiff Felicia Chevette Hall's Response in Opposition (Doc. No. 30) and Memorandum (Doc. No. 31), and Defendant's Reply in Support (Doc. No. 32). For the reasons stated below, Defendant's Motion for Summary Judgment is **GRANTED**.

## II.    FACTUAL BACKGROUND

Defendant Charlotte-Mecklenburg Board of Education ("Defendant" or the "Board") is the governing body of Charlotte-Mecklenburg Schools ("CMS" or the "District"), a local government unit that encompasses the City of Charlotte and much of the greater Charlotte area. (Compl. ¶¶ 3–4, Doc. No. 1.) In the 2009–2010 school year, Plaintiff, an African American, was employed by Defendant as an English Teacher at South Mecklenburg High School ("SMHS"). (Def.'s Mem. Supp. at 2, Doc. No. 25.) At the conclusion of the school year, Defendant notified Plaintiff that it had voted to approve the Superintendent's recommendation to non-renew

1

Plaintiff's employment contract. (*Id.*) However, because this non-renewal decision was part of a District-wide reduction in force, Plaintiff was allowed to apply for other positions within the District. (*Id.*) Plaintiff applied for a position as an English Teacher at Mallard Creek High School ("MCHS"). The Principal of MCHS, Kelly Gwaltney ("Gwaltney"), recommended Plaintiff's hire, and Plaintiff began working in September 2010. (*Id.*) Plaintiff was informed that she would have to complete the 2010–2011 school year before she would be recommended for tenure. (Compl. ¶ 18.)

During the 2010–2011 school year, Plaintiff received three formal observations and evaluations from MCHS administrators. (Pl.'s Mem. Resp. Opp'n at 3, Doc. No. 31.) Plaintiff was first observed by Assistant Principal Jonathan Kay ("Kay") on November 1, 2010. (*Id.*) She was next observed by Dean of Students Dorothy Dae ("Dae") on December 3, 2010. (*Id.*) Gwaltney conducted Plaintiff's final observation on March 14, 2011. (*Id.*) Plaintiff was also observed by a peer, Teacher Marcia Rose, on March 7, 2011, and received a supplemental formal observation from a fourth administrator, Assistant Principal John Floyd ("Floyd"), on March 31, 2011. (*Id.*) Floyd observed Plaintiff in the three standards that are observable in a formal classroom setting—Standard II (classroom management), Standard III (content knowledge), and Standard IV (pedagogy). (Aff. John Floyd at 2, Doc. No. 24-5.) Plaintiff signed each of her evaluations by the administrators and, at that time, added no comments to the "Teacher Comments" box. (Def.'s Mem. Supp. at 3, Doc. No. 25.)

After the supplemental observation, Floyd completed Plaintiff's Teacher Summary Rating Form ("summative evaluation")—a document on which teachers eligible for career status must achieve certain ratings. (Aff. John Floyd at 3, Doc. No. 24-5.) This evaluation was completed in the "McRel system," a computer program that teachers and administrators working

in CMS use to view and complete evaluations, add comments, and sign documents with electronic signatures. (*Id.*) Floyd then conducted a meeting with Plaintiff to discuss her summative evaluation. Prior to this meeting, Floyd notified Plaintiff that the summative evaluation was ready to be viewed by her in the McRel system. (*Id.* at 4.) Floyd also informed Plaintiff that if she wished to bring any artifacts, they had to justify a higher rating in a Standard, and they had to show an impact on student achievement. (*Id.* at 4.)

On April 11, 2011, Floyd conducted the meeting with Plaintiff in his office, at which Gwaltney was present and participated. (*Id.* at 5.) During the meeting, Floyd discussed the ratings Plaintiff received in each of the five Standards on the summative evaluation, and he allowed Plaintiff to discuss her performance for each of these Standards. (*Id.*) Plaintiff signed the evaluation on April 14, 2011. (Pl.'s Dep. at 105, Doc. No. 24-1.) On April 29, 2011, she went into the McRel system and entered comments in the "Teacher Comments" box on the summative evaluation. (*Id.* at 105–06.)

### A. Plaintiff's Failure to Meet Defendant's Performance Expectations

In its policy governing employee performance and non-renewal processes for teachers and administrators, Defendant sets certain performance expectations for teachers seeking to attain career status. (Aff. Kelly Gwaltney at 3, Doc. No. 24-3.) Teachers are evaluated on the basis of five Standards: Standard I (leadership), Standard II (classroom management), Standard III (content knowledge), Standard IV (pedagogy), and Standard V (teachers reflect on their practice). (*Id.*; Aff. John Floyd at 2, Doc. No. 24-5.) According to this policy, a teacher eligible for career status must achieve ratings of at least "Proficient" in each of the five Standards on the summative evaluation and also a rating of above "Proficient" in at least one of the Standards (*e.g.*, "Accomplished" or "Distinguished"). (*Id.*)

Plaintiff received a rating of "Proficient" in every Standard except Standard I (leadership), in which she received a rating of "Developing"—a rating below that of "Proficient." (Ex. 16, Doc. No. 24-2.) Therefore, because Plaintiff did not receive a rating above "Proficient" in any of the five Standards and performed below Proficient in one of the Standards, she did not meet Defendant's performance expectations for a teacher eligible for career status.

## B. The Superintendent's Recommendation and the Board's Decision to Deny Plaintiff Career Status

On June 9, 2011, Superintendent Peter Gorman notified Plaintiff that, based on the ratings she received in her summative evaluation, she did not meet Defendant's performance expectations for attaining career status. (Ex. 19, Doc. No. 24-2.) He informed Plaintiff that he intended to recommend the non-renewal of her employment contract and that she be denied career status. (*Id.*) He then informed Plaintiff that she had the right to request and receive a Board hearing regarding his recommendation. (*Id.*) Plaintiff requested and received a hearing regarding the Superintendent's recommendation, at which she was represented by an attorney. (Exs. 19–21, Doc. No. 24-2; Aff. John Floyd at 7, Doc. No. 24-5.)

The Board adopted the Superintendent's recommendation and included the following findings and conclusions in its written decision issued August 18, 2011:

> The Employee's contract of employment is non-renewed and the Employee is denied career status . . . because the Employee did not meet the level of performance determined by the Board to be sufficient to justify awarding continued employment and career status. . . . [T]he Board hereby non-renews Employee's employment contract, effective the end of the 2010–2011 school year.

(Ex. 23, Doc. No. 24-2.)

## C. Plaintiff's Charges Filed with the EEOC

On January 26, 2012, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Exs. 2–3, Doc. No. 24-1.) Plaintiff asserted that Defendant's decision to non-renew her contract and to deny her career status was discrimination based on race. (*Id.*) The EEOC issued Plaintiff a Notice of Right to Sue for this Charge on January 30, 2013. (Ex. C, Doc. No. 1-1.) This action was timely filed within ninety days of Plaintiff's receipt of the notice.

On September 13, 2012, Plaintiff filed a second Charge of Discrimination with the EEOC, this time alleging that she was "discriminated against in retaliation for complaining of unlawful employment practices that violate Title VII of the Civil Rights Act of 1964, as amended." (Exs. 4–5, Doc. No. 24-1.) Particularly, Plaintiff asserted that she was offered a teaching position with Whitewater Middle School, another CMS school, on August 15, 2012, but later learned that "CMS Human Resources would not clear [her] for hire." (*Id.*) She also asserted that, on September 5, 2012, she was informed that she was not offered a position with Gaston County Schools because she "had not been recommended for tenure by CMS." (*Id.*) Additionally, Plaintiff stated that, on September 5, 2012, CMS General Counsel informed her that she "would not be able to meet with Mr. Heath Morrison, CMS Superintendent, because of [her] pending EEOC charge against CMS." (*Id.*) Accordingly, Plaintiff alleged that she was discriminated against in retaliation for her previous EEOC Charge against CMS. (*Id.*) The EEOC issued Plaintiff a Notice of Right to Sue for this charge on April 5, 2013. (Ex. D, Doc. No. 1-1.) This action was timely filed within ninety days of Plaintiff's receipt of the notice.

# III.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When making this determination, the court must view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Unsupported speculation, however, is insufficient to defeat a motion for summary judgment.  *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A motion for summary judgment must be granted if, after adequate time for discovery and upon motion, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient.").  In such a situation, because a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," there can be "no genuine issue as to any material fact."  *Celotex*, 477 U.S. at 322–23.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247–48 (emphasis in original).  A fact

is material only if it might affect the outcome of the suit under the governing substantive law.  *Id.* at 248.

## IV.    DISCUSSION

Plaintiff has brought two claims of discrimination against Defendant.  First, Plaintiff claims that she was discriminated against based upon her race when Defendant denied her career status and non-renewed her contract in August 2011.  (Compl. ¶¶ 25–27, Doc. No. 1.)  Second, Plaintiff claims that "Gwaltney provided false negative references regarding Plaintiff in retaliation for the charge Plaintiff filed with the EEOC on January 26, 2012."  (*Id.* ¶ 31.)

### A.  Plaintiff's First Claim—Race Discrimination in Violation of Title VII

Plaintiff first alleges that she was discriminated against based upon her race in violation of Title VII.  To establish a *prima facie* case of discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for her job and her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) other employees who are not members of the protected class were retained under apparently similar circumstances.  *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 133 (4th Cir. 2002); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir. 1989).

A plaintiff can establish a Title VII disparate treatment claim through direct proof of discrimination or through the application of the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Evans*, 80 F.3d at 959.  The record in this case reveals no direct proof of discrimination, so the Court will proceed to analyze Plaintiff's claim under the proof scheme set forth in *McDonnell Douglas*.

Under the burden-shifting analysis, if the plaintiff establishes a *prima facie* case, the burden is placed upon the defendant to produce an explanation to rebut the prima facie case—*i.e.*, "the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993) (quoting *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). If the defendant meets this burden, the burden shifts back to the plaintiff to prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).

The parties do not dispute that Plaintiff can establish the first and third elements of her *prima facie* case—that she is a member of a protected class and that she suffered an adverse employment action. (Def.'s Mem. Supp. at 8, Doc. No. 25.)

### 1. Second Element of Plaintiff's *Prima Facie* Case—Whether Her Job Performance Was Satisfactory

Defendant maintains that Plaintiff cannot establish the second element of her *prima facie* case—that her job performance was satisfactory—because "Plaintiff's performance at Mallard Creek during the 2010–2011 school year was inadequate and unsatisfactory." (*Id.* at 8.) Particularly, Defendant points to the fact that Plaintiff did not meet Defendant's performance expectations for a teacher seeking to attain career status; Plaintiff needed to achieve ratings on her summative evaluation of at least "Proficient" in each of the five Standards and also a rating of above "Proficient" in at least one of the Standards. Because Plaintiff failed to achieve a "Proficient" rating in every Standard (she was given a rating of "Developing" for Standard I) and failed to receive a rating in excess of "Proficient" (*e.g.*, "Accomplished" or "Distinguished") in

at least one Standard, Plaintiff failed to meet Defendant's expectations for granting career status, as set forth in Defendant's policy governing employee performance. (*Id.*)

Plaintiff seems to contest Defendant's assertions and argues that Plaintiff received "Accomplished" ratings on "most categories of her observations." (Pl.'s Mem. Resp. Opp'n at 3, Doc. No. 31.) However, the Exhibits to which she cites fail to support her argument and, in fact, support Defendant's assertion that she failed to meet Defendant's performance expectations for a teacher seeking to attain career status. (Ex. 16, Doc. No. 24-2.) The summative evaluation reports the following findings from Plaintiff's observations: for Standard I (leadership), three of the five criteria were checked as "Developing," while the remaining two were checked as "Proficient," therefore giving Plaintiff an overall rating of "Developing" for Standard I; for Standard II (classroom management), two of the five criteria were checked as "Developing," while the remaining three were checked as "Proficient," therefore giving Plaintiff an overall rating of "Proficient" for Standard II; for Standard III (content knowledge), one of the four criteria was checked as "Developing," while the remaining three were checked as "Proficient," giving Plaintiff an overall rating of "Proficient" for Standard III; for Standard IV (pedagogy), three of the eight criteria were checked as "Developing," while the remaining five were checked as "Proficient," therefore giving Plaintiff an overall rating of "Proficient" for Standard IV; and, for Standard V (teachers reflect on their practice), one of the three criteria was checked as "Developing," while the remaining two were checked as "Proficient," therefore giving Plaintiff an overall rating of "Proficient" for Standard V. (*Id.*) Thus, as Defendant maintains, Plaintiff failed to achieve a rating of "Proficient" in every Standard (as she received a rating of "Developing" in Standard I) and failed to receive a rating in excess of "Proficient" in at least one

Standard.  Accordingly, Plaintiff failed to meet Defendant's performance expectations for teachers seeking to attain career status.

Plaintiff sets forth no other evidence to establish that her job performance was satisfactory.  Moreover, assuming *arguendo* that Plaintiff could establish this element of her *prima facie* case, Defendant has satisfied its burden of producing evidence that the adverse employment action was taken "for a legitimate, nondiscriminatory reason"—Plaintiff's performance.  *See Evans*, 80 F.3d at 960 ("Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision.").  "By producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons," Defendant has sustained its burden of production, *see St. Mary's Honor Ctr.*, 509 U.S. at 509, and therefore the burden shifts back to Plaintiff to show that the legitimate reason offered by Defendant was not its true reason, but was merely a pretext for discrimination.  Plaintiff has presented no evidence of pretext.  Therefore, even if she could establish this element of her *prima facie* case, Plaintiff would be unable to rebut Defendant's legitimate reason for the adverse employment action.  *See Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998) (holding that where the plaintiff "presented no evidence that the reasons given for her transfer were pretextual, [she] failed to raise a genuine issue of material fact").

When the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322–23.  In such a situation, an entry of summary judgment is

appropriate. *Id.* Here, because Plaintiff failed to demonstrate the existence of an element essential to her case—that her job performance was satisfactory—summary judgment is appropriate. Nonetheless, the Court will discuss the last disputed element of her Title VII race discrimination claim.

### 2. Fourth Element of Plaintiff's *Prima Facie* Case—Whether She Was Treated Differently than Similarly Situated Employees Outside of Her Protected Class

Defendant also argues that Plaintiff cannot establish the fourth element of her *prima facie* case—that she was treated differently than similarly situated employees outside of her protected class. (Def.'s Mem. Supp. at 9, Doc. No. 25.) Defendant argues that the allegations set forth in Plaintiff's Complaint are mere speculation and, therefore, insufficient to satisfy Plaintiff's burden of establishing the fourth element of her *prima facie* case. (*Id.*)

The party opposing a motion "must set forth specific facts and may not rely on mere allegations contained in the pleadings." *Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 759 (4th Cir. 1996) (citing Fed. R. Civ. P. 56(e)). Mere speculation or the nonmovant's "own naked opinion," without more, is insufficient to avoid summary judgment. *Goldberg v. B. Green & Co., Inc.*, 836 F.2d 845, 848 (4th Cir. 1988). Here, Plaintiff alleges the following regarding Defendant's decision in August 2011 to deny Plaintiff career status and to non-renew her contract: "Other teachers who were white scored below-standard on their observations and were recommended for tenure and had their teaching contracts renewed," and "Plaintiff believed her denial of tenure and non-renewal of her teaching contract was disparate treatment and discrimination based on her race." (Compl. ¶¶ 26–27, Doc. No. 1.) These allegations are, by themselves, merely speculative. Plaintiff alleges that white teachers, who also did not meet Defendant's performance expectations, were recommended for career status and had their contracts renewed.

However, more is required of Plaintiff to establish this element of her *prima facie* case—to preclude summary judgment, she "must set forth specific facts."  *See Yarnevic*, 102 F.3d at 758.

Aside from her conclusory allegations, Plaintiff has identified one teacher outside of her protected class whom she believes to be similarly situated.  Based on a conversation between this teacher and Plaintiff, Plaintiff believes that this teacher, who is white, was retained by Defendant and did not meet Defendant's performance expectations.  (Pl.'s Dep. at 57–59, Doc. No. 24-1.)  However, Plaintiff does not know the ratings this teacher received on her summative evaluation, and Plaintiff knows of no other white teacher who was recommended for career status and contract renewal and scored below Defendant's performance expectations.  (*Id.* at 59.)  There is no other basis for Plaintiff's belief that she was denied career status or her contract non-renewed based upon her race.  (*Id.* at 60.)  In other words, Plaintiff can only speculate as to this teacher's performance.  And, as noted before, such speculation is insufficient to withstand summary judgment.

Moreover, Floyd—who completed this teacher's summative evaluations and conducted her summative conferences—testified in his affidavit that the teacher in question achieved a rating of "Accomplished" in Standard I and a rating of "Proficient" in the other four Standards.  (Aff. John Floyd at 7, Doc. No. 24-5.)  Plaintiff offers no other evidence to rebut this testimony.  Thus, this teacher did, in fact, meet Defendant's performance expectations; she achieved ratings of at least "Proficient" in each of the five Standards on the summative evaluation and also a rating of above Proficient (*i.e.*, "Accomplished") in at least one of the Standards.  Therefore, Plaintiff has failed to establish that she and this teacher were similarly situated.

In sum, Plaintiff has failed to establish all of the elements of a *prima facie* case of race discrimination under Title VII. Assuming *arguendo* that Plaintiff could establish a *prima facie* case, Defendant has met its burden of production to show that the adverse employment action was taken for a legitimate, nondiscriminatory reason. Additionally, Plaintiff cannot satisfy her burden of proving by a preponderance of the evidence that the legitimate reason offered by Defendant was not the true reason for her termination, but merely a pretext for discrimination. "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphasis in original). Plaintiff has presented no evidence that the reason offered by Defendant was false or that discrimination was the real reason.

Additionally, although Plaintiff may assert that her summative evaluation was unfair or incorrect in that her ratings should have been higher, such an assertion does not establish pretext. *See DeJarnette v. Corning Inc.*, 133 F.3d 293, 299–300 (4th Cir. 1998) (stating that the sole concern of the court is "whether the reason for which the defendant discharged the plaintiff was discriminatory. . . . [I]t is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination"). Also, whether Plaintiff believed that her performance was adequate is irrelevant to the Court's analysis. *See Evans*, 80 F.3d at 960–61 (quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)) ("'It is the perception of the decision maker which is relevant,' not the self-assessment of the plaintiff.").

The Court is persuaded that Plaintiff's contract was not renewed and she was denied career status based on her failure to meet Defendant's performance expectations, as set forth in Defendant's policy governing employee performance. Plaintiff relies upon her own speculative

assertions to establish the essential elements of her *prima facie* case—again, such assertions are insufficient to withstand summary judgment. The Court finds that there is no genuine dispute of material fact on these points, and that Plaintiff cannot maintain a claim for discrimination under Title VII.

### B. Plaintiff's Second Claim—Retaliation in Violation of Title VII

Plaintiff next alleges that Defendant retaliated against Plaintiff for the first charge Plaintiff filed with the EEOC. Specifically, Plaintiff alleges that Defendant violated Title VII by "providing false negative references for Plaintiff . . . in retaliation for her report of and objection to racial discrimination and disparate treatment." (Compl. ¶ 43, Doc. No. 1.)

To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action. *King v. Rumsfeld*, 328 F.3d 145, 150–51 (4th Cir. 2003) (citing *Williams*, 871 F.2d at 457). If a plaintiff can establish a *prima facie* case, the burden shifts to the defendant to rebut it by articulating a legitimate, nonretaliatory reason for its action. *Id.* at 151. If the defendant satisfies its burden, "the plaintiff then must show that the employer's proffered reasons are pretextual or his claim will fail." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). More specifically, "the plaintiff can prove pretext by showing that the 'explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [retaliation].'" *Id.* (quoting *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir. 2004)).

It is undisputed that Plaintiff can establish the first element of her *prima facie* case of retaliation—that she engaged in a protected activity. (Def.'s Mem. Supp. at 13, Doc. No. 25.)

Plaintiff filed a Charge of Discrimination with the EEOC in January 2012, which constitutes a "protected activity." *See Carter v. Bell*, 33 F.3d 450, 460 (4th Cir. 1994) (finding that the plaintiff engaged in a protected activity when he filed several equal employment opportunity complaints).

It appears Plaintiff, regarding the second element of her *prima facie* case of retaliation, alleges two retaliatory acts: Gwaltney provided "false negative references" in August 2012 in connection with (1) a position at Whitewater Middle School ("WMS") in the Charlotte-Mecklenburg School System and (2) a teaching position with the Gaston County School System. (Compl. ¶¶ 29–31, Doc. No. 1.) The Court will discuss both of these allegations in turn.

### 1. Allegations of Retaliation Regarding the WMS Position

In her complaint, Plaintiff alleges that she was offered a teaching job with WMS and was subsequently informed that CMS Human Resources would not clear her for hire. (*Id.* ¶ 30; Ex. 4, Doc. No. 24-1.) Plaintiff later clarified in her deposition that she was recommended for, not offered, the teaching position. (Pl.'s Dep. at 66, Doc. No. 24-1.) The parties do not dispute that a decision not to hire can constitute an adverse employment action for purposes of a Title VII retaliation claim. (Def.'s Mem. Supp. at 15, Doc. No. 25.)

To establish the third element of her *prima facie* retaliation claim—that a causal connection existed between the protected activity and the asserted adverse action—Plaintiff must show that the decisionmaker had knowledge that she engaged in a protected activity. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the

employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case."). Thus, in order to establish causation, Plaintiff must show that the decisionmaker was actually aware of Plaintiff's EEOC Charge at the time it took the adverse employment action.

Plaintiff cannot establish that the decisionmaker had knowledge of the EEOC Charge at the time of the adverse employment action. Plaintiff applied for a teaching position at WMS in August 2012. (Pl.'s Dep. at 48–49, Doc. No. 24-1.) After an interview with WMS's Dean of Students and the Assistant Principal, the Dean of Students told Plaintiff that she was recommended for hire. (*Id.* at 48.) Thereafter, Principal Valarie Williams submitted a form to CMS Human Resources recommending Plaintiff for the position. (Aff. Valarie Williams at 1, Doc. No. 24-7.) CMS Human Resources sent the form back to Williams, noting that Plaintiff had been non-renewed due to performance and was ineligible for rehire. (*Id.* at 1–2.) Mekisha Mills, the Human Resources Team Leader in CMS, received the recommendation form for Plaintiff's hire from Williams. (Aff. Mekisha Mills at 1, Doc. No. 24-8.) When Mills received the form, she first checked to see if Plaintiff had been employed with CMS previously. (*Id.*) Mills saw that Plaintiff had been previously employed by CMS and that she had been non-renewed due to performance. (*Id.*) Mills made the determination that Plaintiff would not be offered the position; she did not speak with Williams or any other CMS employee before making the determination. (*Id.* at 2.) Plaintiff was not offered the position because her contract had been non-renewed due to performance. Neither Williams nor Mills was aware that Plaintiff had filed a Charge of Discrimination with the EEOC. (*Id.*; Aff. Valarie Williams at 2, Doc. No. 24-7.)

Thus, because the decisionmaker, Mills, had no knowledge of Plaintiff's EEOC Charge, Plaintiff cannot establish the third element of her *prima facie* case regarding her WMS-related

allegation—*i.e.*, Plaintiff cannot establish that a causal connection existed between her EEOC Charge and WMS's decision not to hire her. *See Dowe*, 145 F.3d at 657 (holding that, because the decisionmaker "was unaware that Dowe had ever filed a complaint with the EEOC," "Dowe cannot establish the necessary causal connection between her filing a complaint with the EEOC and her termination"). Therefore, insofar as Plaintiff's retaliation claim relates to WMS's decision not to offer her the teaching position, Plaintiff has failed to satisfy her burden. Accordingly, the Court finds that there is no genuine dispute of material fact on these points.

### 2. Allegations of Retaliation Regarding the Gaston County Schools Position

Plaintiff next asserts that, in August 2012, she was offered a teaching job with the Gaston County School System and was later informed that "the offer was being revoked based on information provided by Gwaltney." (Compl. ¶ 29, Doc. No. 1.) She alleges that Gwaltney "provided false negative references regarding Plaintiff in retaliation for the charge Plaintiff filed with the EEOC." (*Id.* ¶ 31.) Defendant contends that Plaintiff cannot establish the second and third elements of her *prima facie* case—*i.e.*, Defendant took an adverse employment action against her, and a causal connection existed between the protected activity and the asserted adverse action.

### a. Adverse Employment Action

In the context of a Title VII retaliation claim, "an unjustified negative job reference, refusing to provide a job reference, and informing an individual's prospective employer about the individual's protected activity" are activities which may constitute an adverse action. EEOC Compl. Man. (BNA) § 8-II(D)(2); *see also E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 754 (3d Cir. 1997); *Ruedlinger v. Jarrett*, 106 F.3d 212, 214 (7th Cir. 1997). The EEOC Compliance

Manual clarifies, however, that "a negative job reference about an individual who engaged in protected activity does not constitute unlawful retaliation unless the reference was based on a retaliatory motive." *Id.*

Here, Plaintiff does not allege that Gwaltney refused to provide a reference. Rather, she believes that Gwaltney provided "false negative references." Plaintiff alleges that Gwaltney provided false, negative information to Torben Ross, who was at that time the Principal of Grier Middle School in Gaston Middle Schools. (Pl.'s Dep. at 71–77, Doc. No. 24-1.) Plaintiff points to no specific evidence that Gwaltney provided an unjustified negative reference to Ross or any other prospective employer. However, in her Response in Opposition, Plaintiff argues that there is a genuine issue of material fact because "Plaintiff received conflicting information about what statements were made by Gwaltney to Principal Torben Ross." (Pl.'s Mem. Resp. Opp'n at 12, Doc. No. 31.) Specifically, Plaintiff points to certain emails sent to Plaintiff from Cynthia Howell, Gaston County's Assistant Director of Human Resources. Unfortunately for Plaintiff, this particular evidence is inadmissible. Under Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." To be admissible at the summary judgment stage, "documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) (quoting 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2722 (3d ed. 1998)). The email conversation between Plaintiff and Howell is neither authenticated by nor attached to an affidavit. Thus, this evidence is inadmissible at the summary judgment stage.

Plaintiff also seems to allege that Gwaltney entered some false information into the McRel system. (Pl.'s Dep. at 71–77, Doc. No. 24-1.) Because she believes that Gaston County Schools may have looked at her summative evaluation in the McRel system, she believes that the allegedly false information entered into the system by Gwaltney constitutes "false, negative references." (*Id.*) Aside from completely failing to substantiate this argument, this claim fails because the information in McRel that Plaintiff believes is false was created in March and April 2011, and her first EEOC Charge—the protected activity—was filed in January 2012. No causal link can exist when the alleged retaliation occurs *before* the protected activity. *See Swerdloff v. Green Spring Health Servs., Inc.*, No. 97-2282, slip op. at 7 (4th Cir. Apr. 2, 1998).

Aside from the inadmissible evidence Plaintiff seeks to introduce, the record shows that after Plaintiff interviewed with Ross, Ross called Plaintiff's most recent supervisor. (Aff. Torben Ross at 1, Doc. No. 24-9.) Plaintiff's most recent supervisor was Gwaltney. Gwaltney provided Ross with the dates that she worked with Plaintiff at CMS—this was the only information Gwaltney provided. (*Id.*) Gwaltney made no negative statements about Plaintiff. (*Id.*) Ross interviewed another candidate who had a more impressive résumé and was more suitable for the position; this was the reason Plaintiff was not offered the job. (*Id.* at 2.) The only information provided by Gwaltney—the dates she worked with Plaintiff in CMS—does not constitute "an unjustified negative job reference." This is neutral information that in no way constitutes an adverse employment action. Because Plaintiff cannot establish this essential element of her *prima facie* case, Defendant is entitled to summary judgment. *See Gibson v. Old Town Trolley Tours of D.C., Inc.*, 160 F.3d 177, 182 (4th Cir. 1998) (quoting *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 245 (4th Cir. 1982)) ("[A] jury may . . . not be allowed to infer [retaliation] from evidence that does no more than suggest it as a possibility.").

Nonetheless, the Court will discuss the third element of Plaintiff's *prima facie* case related to the teaching position with the Gaston County School System—whether a causal connection existed between the protected activity and Gwaltney's alleged "false, negative reference."

### b. Causal Connection

Even assuming Plaintiff could establish an adverse employment action by producing evidence of an unjustified negative reference, she must also demonstrate a causal connection between the protected activity and employment action. *King*, 328 F.3d at 150–51. To make such a demonstration, she must show that (1) the person who received the request for a reference had knowledge of Plaintiff's prior alleged complaints, and (2) Gwaltney harbored a discriminatory or retaliatory intent towards Plaintiff when she responded to the request. *See Cooper v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:05CV476-MU, 2007 WL 604724, at *3 (W.D.N.C. Feb. 22, 2007) (citing *Gibson*, 160 F.3d at 181–82).

The record is devoid of any evidence that Gwaltney harbored a discriminatory or retaliatory intent towards Plaintiff. Plaintiff believes that Gwaltney said something negative to Ross, but sets forth no evidence of Gwaltney's intent. Rather, the record reveals that the only information Gwaltney relayed to Ross was the period of time she worked with Plaintiff at CMS. (Aff. Torben Ross at 1, Doc. No. 24-9.) Accordingly, Plaintiff's belief that Gwaltney said something negative to Ross amounts to nothing more than speculation. *See Gibson*, 160 F.3d at 181–82 ("To find causation on the basis of this bare-boned evidence asks the court to move beyond inference and into the realm of mere 'speculation and conjecture.'"). Such speculation, even assuming Gwaltney had knowledge of Plaintiff's EEOC Charge of Discrimination at the time of her conversation with Ross, is insufficient to establish causation. *See id.* at 182 (quoting

*Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179 (7th Cir. 1998)) ("Knowledge is necessary to establish causation, but it is not sufficient. . . . There is no evidence that [the defendant's employee] ever said anything negative about [the plaintiff] or that he ever mentioned the EEOC filing. '*Post hoc ergo propter hoc* is not enough to support a finding of retaliation . . . .'").

Additionally, even if Plaintiff could show that Gwaltney harbored a retaliatory intent towards Plaintiff when she communicated with Ross, Plaintiff has failed to show that the desire to retaliate was the "but-for" cause of the challenged employment action. Absent such a showing, Plaintiff cannot establish a *prima facie* case of retaliation. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.").

Because Plaintiff has failed to establish all of the essential elements of her *prima facie* case of retaliation regarding both alleged adverse employment actions—that she was not offered a position at WMS and that Gaston County School System revoked its offer—the Court finds that there is no genuine dispute of material fact on these points and that Plaintiff cannot maintain a claim for retaliation under Title VII.

## V.     CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Summary

Judgment (Doc. No. 24) is hereby **GRANTED**.

Signed: June 10, 2014

Graham C. Mullen
United States District Judge